```
1              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND
2                     BALTIMORE DIVISION

3    _____
                                     )
     UNITED STATES OF AMERICA,       )
4                                    )
          Plaintiff,                 )
5                                    ) Docket Number
               vs.                   ) 1:23-cv-01999-RDB
6                                    )
     CARAHSOFT TECHNOLOGY CORP.,     )
7                                    )
          Defendant.                 )
8    _____)

9          TRANSCRIPT OF MOTIONS HEARING held via ZOOM.GOV
               BEFORE THE HONORABLE ADAM ABELSON
10              UNITED STATES DISTRICT COURT JUDGE
            Thursday, April 18, 2024, AT 10:00 A.M.
11
     APPEARANCES:
12   On Behalf of the Plaintiff:
          BY:  SAMSON ASIYANBI, ESQUIRE
13             VINCENT J. VACCARELLA, ESQUIRE
          DOJ-USAO
14        175 N. Street, N.E.
          Washington, D.C., 20002
15        (202)353-1053

16        BY:  MATTHEW A. HAVEN, ESQUIRE
          U.S. Attorney's Office
17        District of Maryland
          36 S. Charles Street, Suite 400
18        Baltimore, MD  21201
          (410)209-4955
19
     On Behalf of the Defendant:
20        BY:  WILLIAM E. LAWLER, III, ESQUIRE
               RICHARD CONWAY, ESQUIRE
21             SAMARTH BAROT, ESQUIRE
          BLANK ROME LLP
22        1825 I Street, NW
          Washington, D.C.  20006
23        (202)420-2201

24   ALSO PRESENT:  Aaron Holland

25      ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***
```

1          P R O C E E D I N G S

2     (Court called to order.)

3          **THE COURT:**  Good morning, everybody.

4               (ALL COUNSEL:  Good morning.)

5          **COURT DEPUTY:**  United States District Court for the

6    District of Maryland is now in session.  The Honorable

7    Adam B. Abelson is presiding.

8          The matter now pending before this Court is Civil Matter

9    RDB-23-1999, United States of America v. Carahsoft Technology

10   Corp.  This matter now comes before this Court for the purpose

11   of a motions hearing.

12         Counsel for the record, starting with the plaintiff.

13         **MR. ASIYANBI:**  Sam Asiynabi on behalf of the United

14   States.

15         **MR. VACCARELLA:**  Vince Vaccarella on behalf of the

16   United States.

17         **MR. HAVEN:**  Matt Haven for the United States.  Good

18   morning.

19         **MR. ASIYANBI:**  Your Honor, I would also like to note

20   that we have a member of our team here who hasn't made an

21   appearance and would just care to listen in on this hearing.

22   His name is Aaron Holland, A-A-R-O-N H-O-L-L-A-N-D.  He's off

23   the screen, he's just listening in on the --

24         **THE COURT:**  Good morning.

25         **MR. ASIYANBI:**  Thank you, Your Honor.

1          **THE COURT:**  And for the defense?

2          **MR. LAWLER:**  Good morning, Your Honor.  Bill Lawler

3    for Blank Rome for Defendant Carahsoft.  And with me are my

4    colleagues, Rick Conway and Samarth Barot.

5          **THE COURT:**  All right.  Very good, everybody.  Good

6    morning, I hope everyone is well.

7          I have received your-all's April 1st status update.  I

8    know you all requested some additional time to continue working

9    on that, which is good to hear.  So I think we'll just start

10   with hearing from each side about where things stand, so let's

11   start with the government.

12         **MR. ASIYANBI:**  Thank you.  Good morning, Your Honor.

13         We've made some progress since we last spoke in the last

14   couple of weeks, but there are four things we wanted to address

15   with the Court this morning, the first being just a status

16   update on the conversations we've had with Carahsoft about its

17   document process.

18         The second issue is to request more time line for the

19   completion of the compliance process altogether.

20         Third, just a short status update on the text messages and

21   what we've learned since the last time we spoke about that.

22         And the fourth is to seek the Court's intervention

23   regarding an outstanding impasse on the last interrogatory

24   response that we're waiting for.

25         So just starting with the document -- the document

1   process, in compliance with the Court's instruction as to that,

2   Carahsoft provided a letter to us on March 29th.

3           **THE COURT:**  I'm sorry, Mr. Asiyanbi, I -- there's a

4   little bit of an echo.  I can hear you okay, but just please

5   slow down.  I think that will make it -- I see Ms. Leeper

6   nodding, so it sounds it may be difficult for her, and she's

7   the most important person to understand you today.

8        So go ahead.

9           **MR. ASIYANBI:**  My apologies.

10       It's my -- is the volume of my voice good enough, or --

11   okay.  I'll slow down, then.  Thank you.

12       I started with the document processes itself, and I was

13   explaining that in compliance with the Court's instructions,

14   when we last met, Carahsoft has provided us a letter on

15   March 29th describing its use of search terms to identify

16   potentially responsive documents.  That letter is Government's

17   Exhibit 1, which we provided to the Court yesterday.

18       After reviewing the letter and discussing further with

19   counsel, we determined that the process described in the letter

20   was sufficient and incomplete.  We provided our explanation in

21   a reply letter that we sent to Carahsoft on April 8th, and we

22   also included additional search terms that we believed

23   Carahsoft should have read in the first instance.  And that

24   letter that we sent to Carahsoft on April 8th, it's attached as

25   Government Exhibit 2.

1      The parties have met and conferred at least twice already
2   since then, on April 5th and 11th.  And to Carahsoft counsel's
3   credit, they have since provided two set of search terms in a
4   report to us on April 11th, and, most recently, on April 16th,
5   which is just two days ago.

6      The latter is Carahsoft's Exhibit 1, as I understand it.
7   And it's our expectation that we'll be able to respond to that
8   set of search terms by the end of this week.

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13      So while the government remains dissatisfied with the
14  process that came before now, it appears that the current
15  process might work towards resolving the outstanding documents.
16  And we expect to get back to counsel by the end of this week,
17  and it is our expectation that we should be able to resolve
18  outstanding questions about search terms and search parameters
19  so we can be -- both sides can be settled on that technical
20  question by the end of next week so that we can move on to the
21  next step of the process.

22      So that's the first part of our report to the Court.

23      The second part, which dovetails from the first part,
24  deals with the time line.  Currently there's no time line for
25  completing this process, and that's still a problem for us.  We



 1  think a deadline for completion is necessary for accountability

 2  purposes and for other potential reasons that I'm happy to

 3  explain to the Court.

 4      The most potential reason is the fact that we served

 5

 6

 7

 8

 9                                                          .

10      Likewise, we expect to issue additional deposition notices

11  to Carahsoft personnel.  But the document issue continues to

12  impede our ability to take the depositions.  We can issue

13  notices at any time, but nevertheless, what's important to us

14  is our ability to take the depositions, and not having the

15  documents just impairs that process.

16      And this also impairs our ability to depose other third

17  parties, or to take depositions, or have effective depositions

18  with those third parties when we take them because I think, as

19  we explained to the Court before,

20

21

22

23

24

25

1 ████████████████████████████   ████████████████

2 █████████████████████████████████████████

3 █████████████████████

4     ████████████████████████        █████████████████

5 ██████████████████████████

6       And, finally, regarding time line, I think it's important

7 for the Court and all of us to be mindful of statute of

8 limitations concerns, and that's especially so in this case

9 where the conduct dates back ███████████████████

10 ███████████████   ██████████████████████████████

11 █████████████████████████████

12       This process, in Carahsoft's initial refusal to produce

13 documents, has already eaten up about two years of our clock,

14 and we cannot continue -- we cannot afford to lose another year

15 on a statute of limitations without being able to move our

16 investigation forward.

17       So we're hopeful that all of these circumstances would

18 force both Carahsoft -- certainly Carahsoft, but at least we'll

19 convince the Court that a deadline of sort is necessary.

20       And, in fact, it's our view that the Court should require

21 Carahsoft to produce all of the outstanding records by end of

22 June, which is already plenty of time between now and then to

23 be fully compliant.  And certainly, more time than

24 Judge Bennett anticipated when Judge Bennett required them to

25 produce all of these records by January the 1st.

1      So I can go on and talk about text messages and the

2  outstanding interrogatories.  I'm happy to pause here to see if

3  the Court wants to ask any questions, or if the Court wants to

4  hear from Carahsoft before I move on to the next set of

5  questions -- next set of issues.

6          **THE COURT:**  Right.  No, I appreciate that.  My

7  thought was to let you address number one and number two on

8  your list, which seemed related, and then let counsel for

9  Carahsoft respond.

10     I may have questions, but let me hear from Mr. Conway or

11  Mr. Lawler, whoever is speaking here.

12     And then I'll probably come back to you, Mr. Asiyanbi.

13          **MR. ASIYANBI:**  Thank you, Your Honor.

14          **MR. LAWLER:**  Thanks, Judge.

15     And by the way, we appreciate the Court's accommodation of

16  moving this from last week.  Because we -- to echo the

17  government, we think we have been making progress.

18     So on the first point, we echo that.  We think we are

19  making progress.  We're -- you know, when we get the

20  government's response to the last attempt to, you know, narrow

21  down and focus the search terms, if that's -- well -- you know,

22  we'll respond to that the way we have and hopefully can get

23  down to something manageable.

24     In terms of a deadline, you know, we don't object to that.

25  Without knowing exactly what the next proposal is, it's -- it's

 1  hard to see whether that's going to be reasonable.  But, you

 2  know, end of June, I think, if the Court wants to put in that,

 3  we can -- we can certainly work towards that.  We don't want

 4  this to drag out any longer either.

 5          **THE COURT:**  So is Carahsoft -- well, a couple of

 6  questions for you.

 7      So Mr. Asiyanbi referred to 400,000 documents still to be

 8  produce.  I assume if you all are working at search terms, that

 9  that's a moving target.  But from your perspective, June is a

10  real deadline of completion of document productions?

11          **MR. LAWLER:**  It is.  Although, again, this is the

12  reason we wanted to discuss with government counsel, we think

13  it's 150,000 documents.  So we -- that would need to be

14  produced.  So, you know, Judge, the way these go back and

15  forth, we'll come up with something real.

16      But if it's that ballpark, the end of June doesn't -- you

17  know, the end of June sounds a reasonable target.

18          **THE COURT:**  All right.  So I do think that a deadline

19  is appropriate in these circumstances, given how long this has

20  dragged out.  So hearing no objection from Carahsoft to the end

21  of June, being the deadline for completion of document

22  production, I'll enter an order to that effect.

23          **MR. LAWLER:**  Thank you, Judge.

24      Yeah, and we'll hope that the numbers stay manageable and

25  work -- keep making progress.

1      **THE COURT:**  All right.  So that's completion of

2   document -- why don't we do this?  I understand that you'll

3   be -- the government is responding to your letter regarding the

4   last position or proposal with regard to search terms this

5   week.  Why don't you all file, by Tuesday, a joint proposal

6   regarding what that scheduling order is, which is, in a sense,

7   what we're talking about should read, to make sure there's no

8   misunderstanding about what your obligations are by that

9   deadline.

10      Mr. Lawler, does that work from your perspective?

11      **MR. LAWLER:**  That -- we can work with the government

12   on that.  But the idea being that we would -- the parties would

13   agree that by end of June, document production shall be, you

14   know, pursuant to -- requests shall be completed, right?

15   Something as basic as that?

16      **THE COURT:**  Right.

17      **MR. LAWLER:**  Yeah.  That's fine, Judge.

18      **THE COURT:**  I just know sometimes there can be

19   disagreements about what "complete" means, so I want to make

20   sure that the parties are very clear and as precise as can be

21   about what that means.

22      Mr. Lawler, anything else that you want to be heard on or

23   addressed with respect to document collection and production?

24      **MR. LAWLER:**  Judge, I think it's the way it's

25   supposed to be working.  I mean, like I say, there may be a

1  disagreement about the exact number that results, but it's --
2  we don't need to bother the Court with it.  I think we have
3  made progress and the recent conversations have been very
4  helpful.

5          **THE COURT:**  All right.  Mr. Asiyanbi, anything else
6  you want to add or respond to with regard to document
7  production?

8          **MR. ASIYANBI:**  No, Your Honor.

9          **THE COURT:**  Okay.  So why don't you move on to text
10  messages -- well, let's talk about text messages, and then I'll
11  hear from Carahsoft on that, and then we'll turn back to
12  Interrogatory 7.

13          **MR. ASIYANBI:**  Okay.  Perfect.  And the point we had
14  on text messages, we got a recent production from Carahsoft
15  supplementing our text message production from the full order.
16  And it's my understanding -- although we don't have full access
17  to the production yet, but it's my understanding that the
18  production consists of additional text messages for one more
19  custodian, which is still far short of what we're asking for.

20      So, ultimately, I mean, I think we don't yet have a full
21  explanation of the process on their side, so -- and we're
22  hopeful that they will provide that to us preferably in writing
23  so we can fully assess it.

24      And short of that, we may have to take a record custodian
25  deposition to develop the record relating to that.

1          **THE COURT:**  All right.  Mr. Lawler?

2          **MR. LAWLER:**  Yeah.  We understand that -- where the

3    production is incomplete so far.  We hope to have that

4    completed by the end of next week.  We ran into some staffing

5    and technical problems on our end, but we understand we owe the

6    government that, and we should be done by next week.

7          **THE COURT:**  Very good.  All right.  Interrogatory 7,

8    Mr. Asiyanbi?

9          **MR. ASIYANBI:**  So I think in front of the Court last

10   time, there's been no change in either party's position as to

11   Carahsoft's nonresponsive -- what we belief to be nonresponse

12   to Interrogatory 7.

13       And to refresh the Court's recollection, Interrogatory 7

14   requests -- ████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████

17   ████████████████████████████.

18       We believe there is enough information for the Court to

19   rule on whether Carahsoft should be -- should have to

20   supplement its response because this is really a question of

21   fact.  It is a matter, from the government's perspective,

22   whether the answer is no, in which case Carahsoft should just

23   say so; or whether the answer is yes, in which case they should

24   say so as well and provide the list that we're asking for.

25       From our perspective, they cannot hide behind the notion

1  that this calls for a legal conclusion, would have legal
2  implications.  That's true with virtually every interrogatory
3  request.  You don't make an interrogatory request unless we
4  have some legal implication.
5      **THE COURT:**  Mr. Asiyanbi, I'm looking at your
6  interrogatory, which is 1-4, Page 10, where is the response to
7  that interrogatory that you're contending is nonresponsive or
8  inadequate?
9      **MR. ASIYANBI:**  Do you have a copy -- Your Honor, do
10  you have a copy of Carahsoft's response?
11      **THE COURT:**  I'm sure you provided it.  Just give me
12  the citation by the ECF number so I can pull it up.
13      **MR. ASIYANBI:**  Could the Court give us a moment while
14  we figure out what the ECF citation number is on the docket?
15      **THE COURT:**  Sure.
16      **MR. ASIYANBI:**  Or if Carahsoft's counsel knows it,
17  they are welcome to chime in.
18      **MR. LAWLER:**  I don't know the ECF number.  It's the
19  response, Judge, was put in January 19, 2024.  It's a -- it was
20  a response back to the government.  I'm sorry, I don't know the
21  ECF number.
22      **THE COURT:**  I see it.  I see -- on, these are your
23  statements.
24      Well, why don't you proceed.  If someone finds the
25  citation --

1          **MR. LAWLER:**  Yeah, it's not that long.  I think

2  you'll be able to follow along, Judge.  It's not that long of

3  an answer.

4          **THE COURT:**  All right.  Mr. Asiyanbi, go ahead.

5          **MR. ASIYANBI:**  I do think it's in the third joint

6  status report we filed.  It's one of the exhibits we attached

7  in the status report, if I'm not mistaken.

8          **MR. LAWLER:**  Yeah, I think that's right.

9          **MR. ASIYANBI:**  So that would be March or February,

10  the status report --

11          **THE COURT:**  I see it.  Yeah, February 1st.  ECF 31.

12  All right.  I've got it.  Go ahead.

13          **MR. ASIYANBI:**  And Carahsoft's response is on Page 12

14  to 13.

15          **THE COURT:**  No, I think -- well, 13 to 14 is Number

16  7.

17          **MR. LAWLER:**  It's 13, 14, yeah.

18          **MR. ASIYANBI:**  Correct.  Thank you.

19          **THE COURT:**  All right.  Go ahead.

20          **MR. ASIYANBI:**  So the response that we see is in --

21  their responsive part, Your Honor, is -- particularly goes with

22  the passage to start on the top of Page 14, ████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

1 ████████████████████████████████████

2      We don't have an objection to a narrative response, which

3 occurs with interrogatory responses all the time.  That's not

4 the concern here.

5      If you read the rest of the passage, what you -- our

6 takeaway from the rest of passage, is we actually don't know

7 whether it's saying "yes" or saying "no" to the question that's

8 asked of Carahsoft.

9      And if it's no, then that's perfectly fine, we don't have

10 an objection to that, if that's the answer they are going to

11 give.

12      But if the answer is yes, then, you know, the question

13 needs to provide a list in support of it, and that wasn't

14 provided.  And we can't assert from the response that was given

15 what they are trying to say.

16      So that's what we think is unresponsive about the answer

17 they've given, and why we think the Court should ask them to

18 provide a supplemental respond.  Because the reason as to the

19 question, it's not a narrative question, and it's certainly not

20 the type of question where they can refuse to answer for some

21 other reasons we've heard from counsel in the past.

22           **THE COURT:**  All right.  Give me just a moment to

23 reread their response.

24      And then, Mr. Lawler, I'll hear from you.

25           **MR. LAWLER:**  Thanks, Judge.

1          **THE COURT:**   And this incorporates the response -- or

2   refers to the response in Interrogatory 8.

3          **MR. ASIYANBI:**   Right, where there's some specific

4   transaction -- specific instances listed, right, Judge.

5          **THE COURT:**   All right.  Mr. Lawler?

6          **MR. LAWLER:**   Well, Judge, I mean, we are at an

7   impasse, but with all due respect, this just isn't a question

8   that is capable of a yes-or-no answer.  I mean, it is -- it's

9   clearly compound, right?  And if you want to break it up into

10  three parts, the -- you know, even then, it's impossible to

11  answer, you know, yes or no in a conference where the

12  government is looking for a simple shot.

13      What we've tried to do in our answer is to say, look,

14

15

16          And, you know, that's what we -- that's what we can say.

17      And I think part of the concern is -- I mean, as a

18  real-life example, I think we've discussed this at one of the

19  other hearings with the Court, you know, expect to -- you know,

20

21

22

23

24

25

1   ████████████ , but, you know, they are just -- there's so much

2   into that.

3       And, also, the other thing, too, for a company like

4   Carahsoft, ██████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ██████████████████████

8       So, you know, what's that expectation?

9       So I think, Judge, that's really -- it's -- the question

10  is drafted just not being capable of a -- of a yes-or-no

11  answer.  We're happy to -- and maybe, you know, a deposition

12  down the road would flesh out the way ████████████ actually

13  works, but -- and, you know, if they want to rephrase the

14  question in some way to more closely reflect the actual reality

15  the way the ████████████ , we could try again.

16      But with this question as written, Judge, we think this is

17  about the best we can do.

18          **THE COURT:**  You said that you understand the part --

19  that interrogatory to have three parts.  I think I know what

20  you mean, but what specifically do you understand to be the

21  three separate parts?

22          **MR. LAWLER:**  I think in -- I'm just going to use ████

23  ████████████████████████ and all that.  ████████████████████

24  ████████████████████████████████ right?

25      And then even for the third element, Judge, we've talked

```
 1   to the government a little bit about this, you know, ███████

 2   ████████████████████████████████████████████████████████████

 3   ████████████████████████████████████████████████████████████

 4   ████████████████████████████████████████████████████████████

 5   ████████████████        Just the words are really impossible to

 6   respond to in a -- in a yes-or-no -- in a yes-or-no way.

 7             THE COURT:  All right.  Thank you.

 8             MR. ASIYANBI:  Your Honor, may I respond, please?

 9             THE COURT:  Yes, Mr. Asiyanbi.

10             MR. ASIYANBI:  Thank you, Your Honor.

11        At base, this is a ████████████ case.  And what Mr. Lawler

12   described as three-part questions is actually just one question

13   framed in three different ways to avoid non-responding.

14        And in furtherance of avoiding not responding, we have

15   offered to rephrase the question to make it less compound, if

16   that's the concern.  We have offered to rewrite the question,

17   but the response we've gotten from Carahsoft is saying that

18   they don't want to answer the question.

19        And because this is a ████████████ case, the question the

20   government is asking Carahsoft is ██████████████████████████

21   ██████████████████████████████████ And there -- we can come up

22   with a dozen ways to ask the same question.  And it seems to us

23   that they just don't want to answer it.  And rather -- because

24   they don't want to answer it, they are coming up with all sorts

25   of reasons why they shouldn't be required to do so.
```

1    But clearly -- it's clear to us they understand what the

2  question is asking of them, it is not asking them to answer

3  three different things.  Although, if they want to respond that

4  way, we have no objection to it.

5    The question ultimately is asking ███████████████

6  ████████████████████████████████████████████████████████

7    **THE COURT:**  Well, I mean, we're picking up the

8  discussion from our last hearing.  I mean, I understand

9  Carahsoft's objection in part to be that it's compound, but

10 also to be that it's vague and ambiguous, and as to the term

11 what does ████████████████████████████████████████████████

12 mean?

13   I hear -- I don't know whether it was in response to that

14 discussion that -- whether that discussion is what has prompted

15 you all to offer or suggest to rephrase the question.  Is there

16 a clarification or more precise phrasing of those parts of the

17 question that you think address the vague and ambiguous part of

18 their objection?

19   **MR. ASIYANBI:**  We had -- so the conversation -- we

20 had this conversation with Carahsoft even before we met with

21 the Court last time.

22   **THE COURT:**  Okay.

23   **MR. ASIYANBI:**  Right?  We offered to rephrase it long

24 before we had the conversation with the Court, and they haven't

25 taken us up on the offer.

1    And what we've heard from counsel so far is that they
2   stand on the response they've given, not so much that they want
3   us to rephrase the question.
4        **THE COURT:**   How do you propose to make the question
5   more precise?
6        **MR. ASIYANBI:**   We can go back and come up with
7   another questions.  I'm not sure I'm prepared to do it on the
8   fly.  I can think of other ways to do it on the fly, but I'm
9   not sure that fully addresses the Court's question in the
10  moment, and I want to give some thoughts to that.
11       But what I'm trying to convey to the Court is that we
12  expressed a willingness to phrase it whichever way they want us
13  to phrase it.  If they want to suggest a phrasing for us that
14  they think -- that they think they can answer, we'll take that
15  into consideration and see if it works for us.
16       I think the impasse between us is not so much about the
17  question we've asked.  The impasse is that --
18       **THE COURT:**   Well, I mean, let's take one of the
19  hypotheticals Mr. Lawler -- I'm not deciding anything now.
20  I'll take the bids under advisement.
21       But, for example, one of the hypotheticals Mr. Lawler
22  raised is, let's say ███████████████████████████████
23  ████████████████████████████████████          █████████
24       If you were answering that with that question as phrased,
25  how would you answer it?

1      **MR. ASIYANBI:**  Fair question.  And I would like to

2   answer the Court's question first, and I would like to offer

3   another hypothetical, if the Court would give me a moment to do

4   it.

5       The way I would respond to that question, ███████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████  the

8   answer to our question is no.

9       ████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ██████████████████████  then the answer to that question is

12  going to be yes.

13      And the yes is going to affect ████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████

16      And that's -- that's the instance we're talking about.  It

17  could be --

18          **THE COURT:**  This doesn't -- this doesn't request ████

19  ██████████████████████████████████████████████████

20  ██████████      That's not what you asked.

21      You asked ██████████████████████████████████████████

22  ████████████

23          **MR. ASIYANBI:**  Right.

24          **THE COURT:**  You may be on to something in terms of a

25  more precise way to frame the question.  That's the Court's

1    view.

2         **MR. ASIYANBI:**  It subsumes that, Your Honor.   The

3    question is not limited to just coordination, right?   And this

4    is where my other hypothetical might actually help the Court in

5    understanding what we're trying to get at.

6         Let's say 

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ██████████████████      But -- you know, and that's the fact question

4  we're raising with Carahsoft.

5      ██████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████

8      ██████████████████████████████████████████████

9  ████████████████████████████████████████████████

10 ██████████████████      And -- and that they should be required to

11 answer, and we think they can answer it.  I think they just

12 don't want to answer it because of the possible implications of

13 the answer.

14            **THE COURT:**  All right.  Mr. Lawler?

15            **MR. LAWLER:**  Judge, I mean, I'm reading the same

16 question you are.  The -- the analysis -- I mean, we understand

17 what -- we understand generally what the government is looking

18 at, if it's an ██████████████, case.

19     This question is not capable of being answered in the way

20 that the government is suggesting.  I mean, my example is a

21 real-life example, and it can be multiplied thousands of times

22 by the reality of the market.

23     If the government wants to take a crack at -- my

24 understanding is the government's offer to restructure the

25 question was to break it into three parts, which would still

 1  leave us with the same problem.  If there is a -- if they want

 2  to come up with a proposal to more specifically focus on the

 3  potentially improper ███████████████████████████████

 4  ██████████████  what have you, we can -- you know, we can take a

 5  look at that.  And if that question -- you know, obviously

 6  we'll respond to it -- we'll take a look at any question that

 7  comes up.

 8       But for this question, we are -- we are where we are.

 9            **THE COURT:**  All right.  Understood.

10       All right.  As to this Interrogatory 7 issue, I'll take

11  this under advisement and issue a ruling.

12       As to the deadline for collection of documents, you all

13  will make a filing --

14            **MR. LAWLER:**  Tuesday, yeah.

15            **THE COURT:**  -- put your heads together, make a filing

16  by Tuesday with a proposed scheduling order.  Either I or

17  Judge Bennett will enter that order to make sure that this

18  progress -- that the progress that you all have made in more

19  recent months continues and concludes.

20       Mr. Asiyanbi, or any -- or anybody else on behalf of the

21  government, is there anything else that you feel is appropriate

22  to raise today?

23            **MR. ASIYANBI:**  Not at this time Your Honor.  Thank

24  you.

25            **THE COURT:**  All right.  Mr. Lawler or any of your

1  colleagues?

2       **MR. LAWLER:**  No, Judge.  We're good.  Again, we do

3  appreciate the Court's accommodation for moving us from last

4  week.  We do think there's progress.

5       **THE COURT:**  All right.  Very good.  Thank you

6  everybody.

7       **COURT DEPUTY:**  This Court stands in recess.

8       (Proceedings were concluded at 10:31 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4       I, Paula J. Leeper, Federal Official Court Reporter, in

 5  and for the United States District Court for the District of

 6  Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

 7  the foregoing is a true and correct transcript of the

 8  stenographically-reported proceedings held in the

 9  above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12
                        Dated this 10th day of May 2024.
13

14

15                      /S/ Paula J. Leeper
                      _____
16
                        Paula J. Leeper
17                      Federal Official Reporter

18

19

20

21

22

23

24

25
```