IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| The United States of America, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:23-CV-01999 |
| v. | : | |
| | : | |
| Carahsoft Technology Corp., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**TENTH JOINT STATUS REPORT REGARDING THE PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND NO. 22-498**

The United States and Carahsoft jointly file this status report pursuant to the Sealed Letter Order (ECF 24) of this Court that "[t]he parties shall submit joint status reports to the Court every 30 days," starting on December 1, 2023. This is the Tenth Joint Status Report ("JSR"). The United States' statement is included herein as Attachment A, and Carahsoft's statement is included as Attachment B.

**Attachment A: Statement of the United States**

1.   This matter is before the Court upon the United States' Petition to Enforce Civil Investigative Demand (CID) No. 22-498 that was served on Carahsoft Technology Corp. in 2022. After an initial hearing before Honorable Richard D. Bennett on October 17, 2023, the Court ordered Carahsoft to comply with the CID that the United States had served on June 1, 2022, while referring the matter to then-Magistrate Judge Adam B. Abelson and ordering the parties to file a joint status report monthly. *See* ECF 24 (sealed letter order).

2.   The parties have filed a joint status report at the beginning of each month since then, except in September 2024, when Magistrate Judge Abelson held a virtual hearing and the parties and the Court agreed that a status report was not necessary in light of the hearing.

3.   This is the tenth Joint Status Report in this matter. To orient the Court, Carahsoft produced only 2,650 documents in the one year after service of the CID and before the United States filed its Petition to Enforce. Since the filing, Carahsoft has now produced 505,592 documents. The United States continues to review the documents in furtherance of its investigation of Carahsoft, the original manufacturers, and others who may have conspired to overcharge the government in violation of the False Claims Act. In the course of the CID enforcement proceedings, the parties disagreed as to the scope of CID No. 22-498, and Judge Abelson invited the United States to issue further process to obtain information that he ruled was not encompassed in the original CID.

4.   On July 24, 2024, the United States served a follow-on subpoena, CID No. 24-754, on Carahsoft, seeking documents for other federal agencies (while excluding the documents for the Department of Defense that were obtained pursuant to original CID No. 22-498) and propounding interrogatories for all federal transactions for the enterprise resource software and

services at issue in this investigation. Carahsoft initially asked the government to substantially limit CID No. 24-754 because it allegedly affected 94 federal agencies. In a good faith attempt to negotiate, the government asked for background and qualitative information about the agencies (including relevant dates, sales, resellers involved, etc.) from which the parties could make informed decisions. For example, CID No. 24-754 did not seek documents outside of the relevant dates, for unrelated sales, or regarding unrelated services. As such, the government observed that it was "conceivable to us that Carahsoft's interactions with some of the agencies [ ] is not within the scope" of the CID. *See* ECF 64-4 at 2. This was intended to focus Carahsoft's attention and efforts on the agencies and documents that are within the scope. But rather than negotiate, Carahsoft instead filed a motion to set aside the CID, *see* ECF 64, and insisted then and now (*see, e.g.*, Attachment B, para. 9 below) that a statement cautioning against overstating the burden without evidence was somehow a suggestion that the CID may have been overbroad.

5.      The United States opposed the motion, describing Carahsoft's long history of non-compliance with the original CID and failure to meet its very high burden of demonstrating undue burden with actual facts and evidence sufficient to justify the extraordinary relief of setting aside the follow-on CID and thereby stymying the United States' investigation of potential fraud in connection with multi-billion-dollar government contracts. *See* ECF 67. Carahsoft filed its reply on September 10. *See* ECF. 74.

6.      Carahsoft's motion to set aside the CID is fully briefed. Meanwhile, Carahsoft has not negotiated the parameters or timeline of any response or produced any information in response to any request in the CID. It continues to delay the United States' investigation. Given that this is not a discovery dispute but a refusal by Carahsoft to respond to a duly-issued subpoena, well within the United States' authority to investigate fraud against it, and given that

Carahsoft has not adduced any actual evidence of undue burden, the United States requests that the Court summarily deny Carahsoft's motion on the pleadings, rather than allow Carahsoft to further delay and attempt to dictate the scope of the United States' investigation. Of course, if, however, the Court prefers to hold a hearing, the undersigned counsel for the United States welcome the opportunity to participate.

7.  Furthermore, Carahsoft continues to misapprehend the statutory authority to issue an investigative subpoena, its legal obligation to respond promptly, and the high burden required for the extraordinary relief that it seeks. It demands that the government "explain[n] why the scope of the New CID [is] to the entire federal government," while ignoring that the FCA confers broad authority to investigate fraud against the United States Government. Contrary to Carahsoft's characterization, the United States is not engaged in discovery. It is investigating fraud, and it is long settled that the United States' "authority to request records and undertake other investigatory functions is extremely broad." *Santa Fe Energy Prods. Co. v. McCutcheon*, 90 F.3d 409, 414 (10th Cir. 1996). Carahsoft also argues that CID No. 24-754 is "especially egregious here because DOJ has still not reviewed the documents that Carahsoft has already produced," but it cannot explain why it should be allowed to withhold other evidence of fraud that it has not produced. Most importantly, noticeably absent from Carahsoft's arguments – in its motion, reply, or statement below - is any evidence of undue burden, which is a legal requirement for setting aside a subpoena or modifying it. Instead, it persists in its long pattern of delay and non-compliance in the absence of court intervention.

**Attachment B: Statement of Carahsoft Technology Corp.**

1. On May 6, 2022, DOJ issued CID No. 22-498 ("First CID") and served Carahsoft on June 1, 2022. In response, Carahsoft began producing documents responsive to the First CID on July 1, 2022.

2. In the two years since CID No. 22-498, Carahsoft has consistently communicated with the Government about the needs of the investigation and its compliance obligations. And, as acknowledged above, in response to CID No. 22-498 Carahsoft has produced over 500,000 documents (constituting millions of pages) responsive to CID No. 22-498. Carahsoft produced its last set of documents in response to CID No. 22-498 on June 28, 2024, the discovery deadline agreed to with the Court and the Parties.

3. While Carahsoft was working to meet the June 28, 2024 discovery deadline, DOJ asked Carahsoft to expand its discovery responses to include Department of Agriculture, Department of Labor, Office of Personnel Management, and the Centers for Disease Control and Prevention, which were not covered by CID No. 22-498. Because expanding the scope of the document production the above-mentioned agencies would have made it impossible to meet the court mandated discovery deadline, Carahsoft declined to do so.

4. In response, on July 24, 2024, the Government served Carahsoft with a new CID No. 24-754 ("New CID"), dramatically expanding the scope of its investigation to include transactions involving not only the four "priority" the DOJ had previously identified, but instead the entire US Government for SAP products or services through SAP or resellers.

5. The New CID includes 17 new Interrogatories, each containing several subparts, 14 additional Document Requests, and seeks responses and documents related to *all* federal agencies, *i.e.* all 94 civilian agencies with which Carahsoft has done business for SAP products

as well as all Department of Defense (DoD) agencies for which Carahsoft has already provided responses.

6. Further, the New CID is not just limited to information about ~4,500 orders related to SAP products and services received by Carahsoft within a 10-year time-frame, the New CID also asks for information about every situations where Carahsoft submitted a bid but did not receive an order, and even situations where Carahsoft simply considered responding to a solicitation.

7. Carahsoft tried to confer with the Government and narrow the scope of the new CID.  Specifically, Carahsoft had a call with DOJ, and several follow up email conversations. During those conversations, Carahsoft tried to demonstrate the burdensome nature of the New CID by providing a list of 94 federal agencies that Carahsoft dealt with for SAP software, cloud storage, and related hardware and services during the relevant 10-year time period.  However, in its response dated August 7, 2024, DOJ rejected Carahsoft's offer to narrow the scope of the New CID, and requested extensive information about every transaction Carahsoft has had with the above-mentioned 94 federal civilian agencies, which would in effect be similar to responding to the New CID without any meaningful narrowing of the new CID.

8. Thus, on August 13, 2024, Carahsoft filed a motion to set aside the New CID because the New CID is excessive in scope, duplicative of prior discovery, would be unduly burdensome to respond to, and would unduly delay the investigation.  In the alternative, in its Motion, Carahsoft requested that the scope of the New CID be limited to the four (4) above-mentioned priority agencies previously identified by DOJ.

9. The Government, in its Opposition to the Motion to Set Aside or otherwise, has not yet explained why the scope of the New CID to the entire federal government even though it

acknowledges the possibility that "Carahsoft's interactions with some of the agencies [] is not within the scope of the subject matter of the CID, that it is outside the relevant time period, and/or that it was fleeting in nature." ECF No. 64 at 4 (quoting Motion Ex. D at 2). Nevertheless, DOJ wants Carahsoft to provide information about all 94 civilian agencies with which Carahsoft has done business for SAP products as well as all Department of Defense (DoD) agencies for which Carahsoft has already provided responses. This is especially egregious here because DOJ has still not reviewed the documents that Carahsoft has already produced. Therefore, Carahsoft once again requests that the New CID be set aside in its entirety, or at the very least, the Court limit the scope of the New CID to the four (4) above mentioned priority agencies.

10. Carahsoft understands that DOJ has broad authority to issue FCA CIDs, however, that authority is not limitless. Courts have held that a CID may be set aside where the government's requests are "too indefinite," *United States v. Markwood*, 48 F.3d 969, 977 (6th Cir. 1995) (citing *United States v. Morton Salt Co.*, 338 U.S. 632 (1950)) or "too broad." *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) ("An administrative subpoena thus may not be so broad so as to be in the nature of a 'fishing expedition.'"). A CID may also be set aside for being unduly burdensome because it seeks information already within a government agency's possession. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). Thus, "while substantial deference is given to CIDs and subpoenas, the government cannot merely engage in "arbitrary fishing expeditions." *Blue Cross, Blue Shield of Ohio v. Klein*, 117 F.3d 1420 (6th Cir. 1997) (quoting *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 299 (1991)). Here, Carahsoft has described with specificity the undue burden that would be created by the New CID in its pleadings. *See* ECF No. 64 and 73.

| | |
|---|---|
| October 1, 2024 | Respectfully submitted, |
| | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| | EREK L. BARRON<br>United States Attorney |
| | _/s/ vjv_<br>MATT HAVEN<br>Assistant United States Attorney<br>36 South Charles Street, 4th Floor<br>Baltimore, MD 21201<br>(410) 209-4800<br>Matthew.Haven@usdoj.gov |
| | JAMIE ANN YAVELBERG<br>SARA McLEAN<br>SAMSON O. ASIYANBI<br>VINCENT J. VACCARELLA<br>Commercial Litigation Branch<br>United States Department of Justice<br>175 N Street, N.E., Suite 9.224<br>Washington, D.C. 20002<br>(202) 353-1053<br>(202) 307-0418<br>Samson.Asiyanbi2@usdoj.gov<br>Vincent.J.Vaccarella@usdoj.gov |
| | *Counsel for the United States of America* |
| | _/s/_<br>William E. Lawler III<br>Richard Conway, *Pro Hac Vice*<br>BLANK ROME LLP<br>1825 Eye Street, NW<br>Washington, D.C. 20006<br>Tel: (202) 420-2235<br>Fax: (202 420-2201<br>william.lawler@blankrome.com<br>richard.conway@blankrome.com |
| | *Counsel for Carahsoft Technology Corp.* |